IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDNA MICHELLE WRIGHT,                )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        CASE NO.  1:12-cv-936-MEF
                                     )        (WO – Do Not Publish)
CITY OF OZARK, *et al.*,             )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Edna Michelle Wright ("Wright") brings this action against Defendants City of Ozark (the "City"), Mayor Billy Blackwell ("Mayor Blackwell"), Police Chief Tony Spivey ("Chief Spivey"), and Officers Tim Hicks ("Hicks"), Jimmy Culbreath ("Culbreath"), Derrick Mize ("Mize"), and Clinton Buggs ("Buggs") (collectively, "Defendants"), alleging violations of her constitutional rights under 42 U.S.C. § 1983 and various state law violations.  This suit arises out of Wright's arrest by the Defendant officers, who are employed by the City, for harassment by noise.  Before the Court is Defendants' Motion to Dismiss (Doc. #14).  For the reasons that follow, the Court finds that Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

_____

[1] This Memorandum Opinion and Order is a revised version of the opinion issued on March 31, 2014.  The Court has revised Section IV.A.1 of this opinion dealing with qualified immunity and Plaintiff's unlawful arrest claim as a result of the Court's order granting in part and denying in part Defendants' motion to reconsider the March 31, 2014 Memorandum Opinion and Order.  All other parts of this Memorandum Opinion and Order are the same as the March 2014 opinion.

## I. JURISDICTION AND VENUE

The Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The parties do not claim that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b). The Court finds adequate allegations supporting both.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice.  *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in Wright's complaint as true:

On or about October 28, 2010, at approximately 1:30 p.m., Wright was standing outside her father's home on Hull Street in Ozark, Alabama.  Wright and her son noticed police vehicles traveling quickly to a location down the street from them.  At that time, Wright's son went down the street to see what was happening.  Wright, realizing that she was locked out of her father's house and that her son had the keys, walked down the street towards the incident to retrieve the keys.  As Wright approached the police officers, she encountered Culbreath and asked him if she could retrieve the house keys from her son. Culbreath gave Wright permission to retrieve the keys from her son and then go back down the street.

As Wright began walking towards her son, Culbreath stated that Wright had dropped some money or paper.  Wright looked at what Culbreath was referring to and noticed that the paper did not belong to her, so she continued up the street.  Hicks then told Wright to "pick

up the damn paper." Wright told Hicks that the paper was not hers and continued walking towards her son. Mize then jumped on Wright and stated that she was under arrest. Hicks placed his knee in Wright's back while the other officers attempted to handcuff her and throw her to the ground. Buggs threatened to spray Wright in the face with pepper spray. Wright, who is four feet eleven inches in height and weighed 115 pounds at the time, yelled for the officers to stop using physical force. The incident ended when Mize, Hicks, Culbreath, and Buggs arrested Wright for harassment by noise and took her to the police station where she was charged, booked, and released. The legal charges against Wright were eventually terminated in her favor.

As a result of the altercation, Wright had a contusion or fracture to her foot, as well as scratches on her wrist and arms and bruises on her back, legs, and arms. Wright was sore and suffered headaches after the incident, and she went to the emergency room at Dale Medical Hospital to be seen by a doctor for her injuries.

Wright alleges that Hicks had prior discipline against him for misconduct while a police officer and was suspended or terminated for misconduct. The City, Mayor Blackwell, and Chief Spivey later re-hired Hicks, and he went on to obtain the rank of captain. Hicks was re-hired before the October 28, 2010 incident with Wright.[2]

---

[2] Wright makes further allegations concerning the City, Mayor Blackwell, and Chief Spivey's training and supervision of the Defendant officers, but the Court does not include them in this statement of facts because they are legal conclusions rather than factual assertions. (Doc. #11, at ¶¶ 38–47.) *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also id.* ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atl.*

## IV. DISCUSSION

Wright asserts the following federal and state law claims in her amended complaint: (1) unlawful search and seizure (hereinafter "unlawful arrest")[3] against Hicks, Culbreath, Mize and Buggs (collectively, the "Defendant officers"); (2) excessive force against the Defendant officers; (3) assault and battery against the Defendant officers; (4) false arrest/false imprisonment against the Defendant officers; (5) outrage against the Defendant officers; (6) neglectfulness, unskillfulness, or carelessness against the City; (7) neglectfulness, unskillfulness, or carelessness against the Defendant officers; (8) negligent training and supervision against the City, Mayor Blackwell, and Chief Spivey; (9) negligent hiring against the City, Mayor Blackwell, and Chief Spivey; (10) § 1983 malicious prosecution against the Defendant officers; and (11) malicious prosecution against the Defendant officers under state law. (Doc. #11.) The Defendant officers, Mayor Blackwell, and Chief Spivey are all sued in their official and individual capacities. (Doc. #11, at ¶¶

---

*Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[3] Wright categorizes her first claim as an unlawful search and seizure in violation of the Fourth Amendment. However, Wright has failed to plead any facts suggesting that a search was conducted. Instead, Wright's unreasonable search and seizure claim is couched on the premise that the unlawfulness of the arrest gave rise to the unreasonable search and seizure. Accordingly, the Court construes this claim as an unlawful arrest claim and will analyze that claim as such.

3–8.)  Defendants seek dismissal of all claims against them under Rule 12(b)(6), as well as on the basis of qualified immunity for federal claims and State-agent immunity and discretionary function immunity for state claims.  The Court will first consider Wright's federal claims before discussing her state law and official capacity claims.

## A.     Federal Claims

### 1.     Unlawful Arrest

Count I of Wright's amended complaint alleges that the Defendant officers arrested her without probable cause in violation of her Fourth Amendment right to be free from unreasonable search and seizure.  (Doc. #11.)  The Defendant officers have moved to dismiss this claim on the grounds of qualified immunity.  Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is intended to protect government officials from the chilling effect that the fear of personal liability would create in carrying out their discretionary duties.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  To this end, it immunizes "from suit 'all but the plainly incompetent or one who is knowingly violating the law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).  Because qualified immunity acts as an affirmative defense, the "public official must first prove that he was acting within the scope of his discretionary authority when the

6

allegedly wrongful acts occurred." *Id*.  In this case, it is undisputed that the Defendant officers were acting within the scope of their discretionary authority when they arrested Wright.  (Doc. #19.)

Once an officer seeking qualified immunity shows that he acted in a discretionary capacity, the burden shifts to the plaintiff to show that qualified immunity should not apply. *See Lee*, 284 F.3d at 1194.  Courts follow a two-prong qualified immunity analysis.  The first prong inquires into whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong inquires into whether a constitutional right was clearly established at the time the violation occurred *See id*.  Following the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), a federal district court may use its sound discretion when deciding which prong of the qualified immunity analysis to address first.

The Court will first address whether the facts alleged by Wright show that the Defendant officers violated her constitutional rights when they arrested her.  An arrest without probable cause violates an individual's right to be free from an unreasonable search and seizure under the Fourth Amendment.  *See Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003).  Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.  *See Skop v. City of Atlanta*, 485 F.3d

1130, 1137 (11th Cir. 2007) (citation and quotation omitted). To receive qualified immunity, an officer need not have actual probable cause but only "arguable" probable cause. *See Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). Arguable probable cause exists when reasonable officers in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed to arrest the plaintiff. *See Brown v. City of Huntsville,* 608 F.3d 724, 734 (11th Cir. 2010) (citation and quotation omitted). Whether arguable probable cause exists depends on the elements of the crime and the particular facts. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004).

The Defendant officers claim they are entitled to qualified immunity because they could have arrested Wright for littering. (Doc. #15.) Although Wright was not arrested for littering, "[i]f the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." *Brown*, 608 F.3d at 735. "A person commits the crime of criminal littering if he or she engages in any of the following acts . . . (1) Knowingly deposits in any manner litter on any public or private property or in any public or private waters, having no permission to do so." Ala. Code § 13A-7-29(a)(1). The question is thus whether the amended complaint states a plausible claim that the Defendant officers lacked arguable probable cause to believe Wright knowingly deposited litter without permission.

The Defendant officers argue that, based on Wright's allegations, Culbreath told Wright that she dropped some money or paper on the ground and that there was, in fact, paper on the ground. Thus, the Defendant officers argue that it was objectively reasonable

for Culbreath to believe that Wright had committed misdemeanor criminal littering in his presence. (Doc. #15.) The Defendant officers further argue that Hicks, Mize, and Buggs were entitled to rely on Culbreath's statement that the plaintiff dropped the paper when they arrested Wright. (Doc. #15.) The Court is not persuaded by these arguments.

Two principles work in Wright's favor to overcome the Defendant officers' qualified immunity defense. First, at this stage of the case, Wright need only allege facts sufficient to make out a plausible, not a probable, constitutional violation. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Second, in determining whether an officer's conduct violated a constitutional right, district courts are to consider the facts "in the light most favorable to the party asserting the injury." *Saucier*, 533 U.S. at 201. When taking the facts alleged in the light most favorable to Wright, the Court concludes that Wright has alleged sufficient facts to make out a plausible constitutional violation based on the Defendant officers arresting her without arguable probable cause.

Wright plausibly alleges that the Defendant officers lacked the information necessary to justify a reasonable officer in arresting Wright for littering in the same circumstances. Wright alleges that Culbreath told her she dropped some money or paper. She does not allege that Culbreath saw her drop the money or paper, or that he otherwise perceived her doing so. Further, Wright alleges that she said the paper was not hers after Hicks told her to pick up the paper. In short, the amended complaint does not allege that the officers perceived

Wright littering, but rather that she denied the paper was hers and they arrested her anyway. These facts, taken in the light most favorable to Wright, essentially allege that the Defendant officers arrested Wright for criminal littering because of Wright's mere proximity to a piece of paper on the ground. Further, the Court cannot accept at this stage the Defendant officers' argument that Hicks, Mize, and Buggs reasonably relied on Culbreath's statement that Wright dropped the paper because this would be to take the facts in the light most favorable to the moving party, which is improper on a motion to dismiss.[4] In sum, the Court finds that Wright has stated a plausible claim for unlawful arrest based on the Defendant officers' lack of arguable probable cause to arrest her, and the Defendant officers are not entitled to qualified immunity, at least at this stage of the proceedings, as a result. Accordingly, Defendants' motion to dismiss Count I of the amended complaint is DENIED.

## 2.   Excessive Force

Wright asserts a constitutional violation for excessive force against the Defendant officers in Count II of her amended complaint. The Defendant officers have moved to dismiss on the grounds that Wright's excessive force claim is subsumed in her unlawful

---

[4] Defendants cite *Williams v. Town of White Hall*, 450 F. Supp. 2d 1300 (M.D. Ala. 2006), for the proposition that officers may reasonably rely on information received by fellow officers in deciding to arrest a suspect, even if it turns out later the information was wrong and did not support probable cause. The Court notes that *Williams* involved a grant of summary judgment to the officers, and the well-developed factual record in that case supported Judge Thompson's conclusion that the official's reliance on officer testimony was reasonable. Here, at the motion to dismiss stage, Wright must only state a plausible claim for relief, the Court must take the facts in the light most favorable to Wright, and the Court is lacking any factual record like that available in *Williams* to rebut Wright's allegations.

arrest claim.  The Court agrees that Wright's claim for excessive force is subsumed in her unlawful arrest claim.

A claim that any force in an illegal stop or arrest is excessive is generally subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000).  A claim that officers used excessive force in an arrest because they lacked the right to make the arrest "is not a discrete constitutional violation; it is dependent upon and inseparable from" the unlawful arrest claim.  *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).  Wright's excessive force claim is based solely on her claim that Defendant officers lacked probable cause to arrest her and, therefore, were constitutionally prevented from using any force against her.[5]  Accordingly, Wright's excessive force claim is entirely derivative of, and subsumed within, her unlawful arrest claim, and Defendants' motion to dismiss Count II of the amended complaint is GRANTED.[6]

---

[5]  Specifically, in Count II, Wright alleges: "It is apodictic that the use of <u>any</u> force against a person who has not committed a crime is wrong and that any such force used is unreasonable and excessive," (Doc. #11, at ¶ 63), and that "considering the lack of probable cause that Plaintiff had committed any crime, the level of force used against Plaintiff was clearly excessive," (Doc. #11, at ¶ 65), and that the officers "touched, assaulted, seized, imprisoned, and detained Plaintiff without a warrant, without probable cause, and without consent."  (Doc. #11, at ¶ 68.)

[6]  This is not to say that Wright cannot recover damages for the force used in her allegedly unlawful arrest, since damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest.  *See Bashir*, 445 F.3d at 1332 (quotation and citation omitted).

### 3.     Section 1983 Malicious Prosecution

Wright asserts a § 1983 malicious prosecution claim against the Defendant officers based on their bringing criminal charges against her, which required Wright "to go to Court against her will after arraignment."  (Doc. #11, ¶ 115.)  To prevail on this type of claim, Wright must prove (1) the elements of the common law tort of malicious prosecution, (2) an unlawful seizure in violation of the Fourth Amendment, and (3) that the unlawful seizure is related to the prosecution.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1234–35 (11th Cir. 2004).  An unlawful seizure is related to the prosecution where the deprivation of liberty suffered by the plaintiff occurs after the plaintiff's arraignment.  *Id*. at 1235.  Thus, a "plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest."  *Id*. (quotation and citation omitted).

Based on Wright's own allegations, after her arrest she was "charged, booked and *released*." (Doc. #11, ¶ 28) (emphasis added).  Thus, her § 1983 malicious prosecution claim is based only on her having to subsequently go to court to defend a charge for an arrest made without probable cause.  The Eleventh Circuit has held that having to attend court to defend a charge arising out of an allegedly unlawful arrest does not constitute a cognizable § 1983 malicious prosecution claim.  *See Kingsland*, 382 F.3d at 1236.  Accordingly, Defendants' motion to dismiss Count X of the amended complaint is GRANTED.

12

**B.**    **State Law Claims**

Wright asserts state law claims for assault and battery, false arrest/false imprisonment, "neglectfulness, unskillfulness or carelessness," and malicious prosecution against the Defendant officers.[7]  Wright also asserts a claim for municipal liability against the City for the neglectfulness of its officers, as well as negligent training/supervision and negligent hiring claims against Mayor Blackwell, Chief Spivey, and the City.  The Court will first consider the state law claims against the Defendant officers and will then address the remaining state law claims.

**1.**    **State law tort claims against the Defendant Officers**

The Defendant officers move to dismiss the state law tort claims against them on the basis of State-agent and discretionary function immunity.  Alabama recognizes two types of state-law immunity: State-agent immunity and discretionary-function immunity.  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  State-agent immunity under Alabama law "protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities."  *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002).  In other words, a State-agent shall be immune from civil liability in his or her personal capacity [for]…

> (4) exercising judgment in the enforcement of the criminal laws
> of the State, *including, but not limited to, law-enforcement*

---

[7] Wright concedes that her outrage claim against the Defendant officers is due to be dismissed.  (Doc. #19, at 27).  Therefore, Defendants' motion to dismiss Count V of the Amended complaint is GRANTED.

> *officers' arresting or attempting to arrest persons . . .*
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) *when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.*

*Ex Parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (emphasis added).

The Alabama Supreme Court has established a burden-shifting framework for application of the State-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle him to immunity. *See Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). "If the State-agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id*. Second, there is statutory, discretionary-function immunity for law enforcement officers in Alabama. *See Brown*, 608 F.3d at 741. Specifically, § 6-5-338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. Ala. Code § 6-5-338(a) (1994) ("Every peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance

of any discretionary function within the line and scope of his or her law enforcement duties."); *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003).

*Cranman*'s test for State-agent immunity also governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a). *See Hollis v. City of Brighton*, 950 So. 2d 300, 307–09 (Ala. 2006). This includes the *Reynolds* burden-shifting framework, which first requires the defendant law enforcement officer to show that he was acting within his discretionary authority and then shifts the burden to the plaintiff to show "bad intent"—that the officer acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority—in order to defeat the officer's discretionary-function immunity. *See Brown*, 608 F.3d at 741; *Wood*, 323 F.3d at 883; *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman*, 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a).").

The Defendant officers were acting within their discretionary authority when they arrested Wright. *See Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002) ("Generally, arrests and attempted arrests are classified as discretionary functions."). Therefore, Wright bears the burden of alleging sufficient facts to establish that the Defendant officers' actions are not entitled to either State-agent or discretionary-function immunity.

### a.   Assault and Battery

Wright alleges assault and battery based on the Defendant officers' use of physical

force in arresting her.  Before any force can be used in making an arrest, probable cause must exist to make a lawful arrest.  *See Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995).  Since the Court has found that Wright pled sufficient facts to state a plausible claim that the Defendant officers lacked arguable probable cause to arrest her, the officers were likewise not entitled to use any force against her in effecting her arrest.  Accordingly, the Defendant officers are not entitled to State-agent or discretionary-function immunity for Wright's assault and battery claim, and Defendants' motion to dismiss Count III of the amended complaint is DENIED.

### b.      False Arrest/False Imprisonment

Under Alabama law, false imprisonment is the "unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  Ala. Code § 6-5-170 (1975).   In determining whether a police officer receives State-agent or discretionary-function immunity for making an arrest, Alabama applies the federal standard of arguable probable cause.  *See Borders v. City of Huntsville*, 875 So. 2d 1168 (Ala. 2003). The Court has already determined that Wright pled sufficient facts to state a plausible claim that the Defendant officers lacked arguable probable cause to arrest her.  Because placing someone under arrest without probable cause constitutes false imprisonment, the Defendant officers are not entitled to State-agent or discretionary-function immunity for Wright's false arrest/false imprisonment claim.  Therefore, Defendants' motion to dismiss Count IV of the amended complaint is DENIED.

16

### c.      Neglectfulness, Unskillfulness, or Carelessness

Wright alleges in Count VII of her amended complaint that the Defendant officers carried out their duties in a "neglectful, unskillful, or careless manner."  (Doc. #11, at 13.)  As Defendants correctly note, there is no tort for "neglectfulness, unskillfulness, or carelessness" against individual officers.  Rather, municipalities can be held liable for the "neglect, carelessness or unskillfulness" of an officer or employee pursuant to Alabama Code § 11-47-190.  But Wright asserts such a claim against the City in a separate count, and any allegations that the Defendant officers acted with neglect or in an unskillful manner are relevant to the City's liability for that particular claim.  As such, Defendants' motion to dismiss Count VII of the amended complaint is GRANTED.

### d.      State Law Malicious Prosecution

A malicious prosecution claim has five elements under Alabama law: (1) that the defendant instituted a judicial proceeding against the plaintiff, (2) without probable cause, (3) but with malice, (4) and although the prior proceeding ended in the plaintiff's favor, (5) she still suffered damages. *Skinner v. Etheridge*, 564 So. 2d 902, 903 (Ala. 1990).  Wright alleges a plausible state law claim for malicious prosecution.  Wright alleges that the Defendant officers instituted a judicial proceeding against her by signing a criminal complaint.  Wright further alleges that there was no probable cause that she committed a crime, and the Court has already determined that Wright states a plausible claim for an unlawful arrest.  Where a prosecution is initiated without probable cause, malice may be

inferred.  *See Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 832–33 (Ala. 1999).  Finally, Wright alleges that the prosecution terminated in her favor and that she suffered loss of money and pain and suffering as a result.  Based on these allegations, Wright has alleged sufficient facts to state a claim for state law malicious prosecution against the Defendant officers, and Defendants' motion to dismiss Count XI of the amended complaint is DENIED.

> **2.    Negligent Training/Supervision and Negligent Hiring Against the City, Mayor Blackwell, and Chief Spivey**

Wright asserts in Counts VIII and IX of her amended complaint claims for negligent training and supervision and negligent hiring on the part of the City, Mayor Blackwell, and Chief Spivey.  Wright's negligent training/supervision claim is due to be dismissed because it fails to allege sufficient facts to survive a motion to dismiss.  Wright's negligent hiring claim is due to be dismissed as to Mayor Blackwell and Chief Spivey because there is no cause of action against a supervisory employee for negligent hiring under Alabama law.  *See Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314–15 (S.D. Ala. 2001).  Wright's negligent hiring claim against the City is due to be dismissed because there is no direct action against a municipality for negligent hiring.  *See Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1310–11 (S.D. Ala. 2001).

Wright's negligent training/supervision claims are too vague and conclusory to satisfy *Iqbal*.  Wright fails to allege that the training or supervision of the City had any bearing on the behavior of the Defendant officers.  Indeed, Wright fails to point to anything in the Defendant officers' training program with any specificity.  Instead, Wright merely alleges

18

that the negligent training and supervision on the part of the City, Mayor Blackwell, and Chief Spivey resulted in her unlawful arrest. However, the standard for a 12(b)(6) motion to dismiss is clear that conclusory allegations on the part of the plaintiff will not defeat a motion to dismiss. *See Twombly*, 550 U.S. at 559. Nor does it suffice if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561. Thus, Wright has failed to plead a plausible claim for negligent training/supervision, and Defendants' motion to dismiss Count VIII of the amended complaint is GRANTED.

Wright's claims against Mayor Blackwell, Chief Spivey, and the City for negligent hiring are also due to be dismissed. Wright cites no authority for the proposition that supervisors may be held liable for negligent training, hiring, or supervision, or that a municipality may be held liable for a supervisor's negligent hiring. Courts have routinely held that no such causes of action exist in Alabama. *See Cheatham v. City of Tallassee*, No. 2:11-cv-672, 2012 WL 3890127, at *13 (M.D. Ala. Sept. 7, 2012) (finding that Alabama does not recognize a cause of action against a supervisor or municipality for negligent supervision/training/hiring); *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258–59 (M.D. Ala. 2010) (same); *Grider v. City of Auburn*, 628 F. Supp. 2d 1322, 1351–52 (M.D. Ala. 2009) (same); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1058 (S.D. Ala. 2007) (same); *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1310–11 (S.D. Ala. 2001) (same).[8]

---

[8] Recent dicta from another court in this district casts some doubt on this proposition. *See Hughes v. City of Montgomery*, No. 2:12-cv-1007, 2013 WL 5945078, at *3 (M.D. Ala. Nov. 6,

Accordingly, Wright's negligent hiring claims against the City, Mayor Blackwell, and Chief Spivey fail, and Defendants' motion to dismiss counts VIII and IX of the Amended complaint is GRANTED.

### 3.    City of Ozark's Liability for Negligence of Agents

Wright alleges a claim against the City for the "neglect, carelessness or unskillfulness" of its agents pursuant to Alabama Code § 11-47-190.  This statute creates *respondeat superior* liability for municipalities based on the negligence of their agents.  *See City of Birmingham v. Benson*, 631 So. 2d 902, 905 (Ala. 1993).  Section 11-47-190 absolves a city from liability for an intentional tort committed by one of its agents.  *Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998).  Instead, the agent must have acted negligently to create liability for a municipality.  *See City of Birmingham v. Thompson*, 404 So. 2d 589 (Ala. 1981).  However, the Alabama Supreme Court has held that what are ordinarily considered intentional torts may be committed in a negligent manner, thus creating liability for a municipality.  *See Thompson*, 404 So. 2d at 592 (recognizing a tort of "negligent assault and battery" for purposes of municipal liability under Section 11-47-190); *Lee v. Houser*, ___ So. 3d ___, 2013 WL 6703454, at *9 (Ala. Dec. 20, 2013) (stating that "a plaintiff may have a cause of action against a municipality for negligence such as false arrest or false

_____

2013) (Thompson, J.).  The *Hughes* court cites *Ex parte City of Montgomery*, 99 So. 3d 282 (Ala. 2012), as a basis for the claim that Alabama might recognize a direct action against a municipality for a supervisor's negligent training or supervision of a subordinate.  However, the holding of *Ex parte City of Montgomery* is not clear, and it does not yet persuade this Court to depart from existing precedent.

20

imprisonment"). Wright has stated plausible claims against the Defendant officers for assault and battery and false imprisonment, which can potentially create liability for the City under § 11-47-190.[9]

This does not end the inquiry on the City's liability because the City is entitled to immunity if the Defendant officers are. *See Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is immune."). The Court has previously found that the Defendant officers were not entitled to State-agent or discretionary function immunity for Wright's assault and battery and false imprisonment claims arising out of her arrest. It does not necessarily follow, however, that the City may be liable based on the Defendant officers' lack of immunity. Rather, it depends on the particular reason why the Defendant officers lack immunity. For instance, if an officer is not entitled to immunity for assault and battery or false imprisonment because he acted "willfully, maliciously, fraudulently, [or] in bad faith," then the officer's malicious intent precludes a finding of "negligent" assault and battery and "negligent" false imprisonment that could create *respondeat superior* liability on behalf of the municipality. *See Dawson v. City of Montgomery*, No. 2:06-cv-1057, 2008 WL 659800, at *10 (M.D. Ala. Mar. 6, 2008) (Watkins, J.). This is because an officer's lack of immunity under the *Cranman* exception

---

[9] Wright's claim against the Defendant officers for state law malicious prosecution cannot serve as a basis for municipal liability under § 11-47-190 because a municipality cannot entertain a malicious intent. *See Neighbors v. City of Birmingham*, 384 So. 2d 113 (Ala. 1980).

for willful or malicious behavior is an impermissible attempt to impose liability on a municipality for an intentional tort of its agent.  *See Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998).  But an officer also may not be entitled to immunity if he "fail[ed] to discharge [the arrest] pursuant to detailed rules or regulations, such as those stated on a checklist."  *Ex parte City of Tuskegee*, 932 So. 2d 895, 906 n.6 (Ala. 2005).  In such a case, the officer's false imprisonment or assault and battery would not be the result of malice, but would be the result of negligence and could create liability for the municipality.  *See Fowler v. Meeks*, No. 2:13-cv-105, 2014 WL 457762, at *9 (M.D. Ala. Feb. 4, 2014) (Watkins, J.) (allowing claims for negligent assault and battery and negligent excessive force to survive a motion to dismiss against a municipality since the complaint alleged officers failed to follow "detailed rules or regulations").

Turning to Wright's claims, it is clear that she does not allege the Defendant officers failed to follow detailed procedures in arresting Wright, but rather that they acted willfully, maliciously, and in bad faith in committing assault and battery and false imprisonment. (Doc. #11.)  Wright also characterizes her claims against the application of State-agent and discretionary function immunity to the officers in her own brief as involving the *Cranman* exception for malicious behavior.  (Doc. #19.)  If the Defendant officers' lack of immunity is predicated on willful and malicious intent in effecting Wright's arrest, then Wright attempts to create *respondeat superior* liability for the City based on the intentional torts of its agents, which is impermissible.  *See Ex parte City of Tuskegee*, 932 So. 2d at 910

22

("Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are carried out in bad faith or with malice."); *Ex parte City of Gadsden*, 718 So. 2d at 721 (Ala. 1998).  Therefore, Defendants' motion to dismiss Wright's claim for municipal liability against the City in Count VI of the Amended complaint is GRANTED.

## C.   Official Capacity Claims

Wright brings claims against Mayor Blackwell, Chief Spivey, and the Defendant officers in their official, as well as individual, capacities.  (Doc. #11, at ¶¶ 3–8.)  Wright clarifies in her brief that her official capacity claims are brought solely in support of her request for a declaratory judgment and other, unspecified equitable relief, which presumably includes injunctive relief.  (Docs. #17, 19.)  To the extent Wright's amended complaint could be construed to assert official capacity claims against Defendants, and hence, the City, in support of an award of money damages, all such claims are deemed abandoned.  Thus, Wright's official capacity claims seek only declaratory judgment and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

Defendants argue, and the Court agrees, that Wright has failed to allege sufficient facts to establish that she has standing to pursue equitable relief against Defendants.  In *City of Los Angeles v. Lyons*, the Supreme Court held a plaintiff did not have standing to pursue injunctive relief in a challenge to the police department's policy on applying chokeholds because, even though Lyons had been subjected to a chokehold, he could not establish "a real and immediate threat" that he would be subjected to an illegal chokehold in the future.  461

23

U.S. 95, 105 (1983).  To establish standing for equitable relief against the city, Lyons would have had to allege either that all police officers always choke any citizen they encounter or that the city ordered or authorized police officers to act in such a manner.  *Id*. at 105–106.

Wright's allegations against Defendants are like Lyons' allegations and are due to be dismissed for lack of standing.  Wright's allegations arise out of a random encounter with police as they responded to a nearby disturbance and involve the claim that police arrested her without probable cause after she refused to pick up a piece of paper that was not hers. There is nothing in these allegations to suggest Wright is likely to encounter such a situation again, or that the City has a policy of ordering citizens to pick up paper that is not theirs and arresting them for noncompliance.  *See Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1554–55 (11th Cir. 1989) (applying *Lyons* to deny standing for injunctive relief where plaintiffs proved they were bitten by police dogs on particular occasions).  Accordingly, Defendants' motion to dismiss Wright's official capacity claims is GRANTED.

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1.     Defendants' motion to dismiss all official capacity claims in the amended complaint (Doc. #11) is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

2.     Defendants' motion to dismiss Counts II, V, VII, and X of the amended complaint (Doc. #11) against Officers Hicks, Culbreath, Mize, and Buggs is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

24

3.      Defendants' motion to dismiss Counts I, III, IV, and XI in the amended complaint (Doc. #11) against Officers Hicks, Culbreath, Mize, and Buggs is DENIED.

4.      Defendants' motion to dismiss Counts VI, VIII, and IX in the amended complaint (Doc. #11) against the City, Mayor Blackwell, and Chief Spivey is GRANTED, and those claims are DISMISSED WITH PREJUDICE.   Therefore, no claims remain pending against the City, Mayor Blackwell, and Chief Spivey.

DONE this the 2nd day of May, 2014.

/s/  Mark E. Fuller
UNITED STATES DISTRICT JUDGE