IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDNA MICHELLE WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  1:12cv936-MHT |
| ) | |
| TIM HICKS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

The lengthy paper trail in this case begins with one small scrap of paper.  Plaintiff Edna Michelle Wright ("Plaintiff" or "Wright") refused to obey a police officer's order to pick up a piece of paper.  The events arising from Wright's refusal culminated in her arrest and prosecution for disorderly conduct.  Against this factual backdrop, Wright brings this 42 U.S.C. § 1983 action against City of Ozark Police Officers Tim Hicks, Jimmy Culbreath, Derrick Mize, and Clinton Buggs in their individual capacities.  On May 2, 2014, this court dismissed several claims against the defendants.

The following claims remain:

- Count I - Officers Hicks, Culbreath, and Buggs unlawfully arrested her without probable cause in violation of the Fourth Amendment.

- Count III - Officers Hicks, Culbreath, and Buggs engaged in assault and battery.

- Count IV - Officers Hicks, Culbreath, Mize, and Buggs

      subjected her to a false arrest and imprisonment.

- Count XI - Officers Hicks, Culbreath, Mize, and Buggs engaged in malicious prosecution.

On October 27, 2015, the defendants filed a Motion for Summary Judgment. Doc. 61. On October 29, 2015, this court ordered Plaintiff to file a Response to the Motion on or before December 9, 2015. The court directed the United States Marshal to personally serve Plaintiff with a copy of the Motion for Summary Judgment. Doc. 64. The Marshal attempted service on three separate occasions without success. Doc. 65. On January 8, 2016, this court ordered Plaintiff to provide this court with her current address. Doc. 66. On January 22, 2016, Plaintiff filed a notice of her most current address. Doc. 69. On February 2, 2016, this court extended the deadline for filing a response and ordered Plaintiff or her attorney to file a response to the Motion for Summary Judgment on or before February 23, 2016. Doc. 71. Plaintiff was cautioned that the failure to comply with the court's order would result in the court resolving the Motion for Summary Judgment without her response. *Id.* A return receipt card indicates that Plaintiff received copies of the Order and Motion for Summary Judgment the following day. Doc. 72. Plaintiff, however, did not file a response.

      Now pending before the court is the Motion for Summary Judgment. Upon consideration of the Motion, the court concludes that it should be GRANTED and this case be dismissed with prejudice.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute]¹ as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of

---

¹ Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering her opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children &*

5

*Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the

6

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### III. DISCUSSION

**A. Facts**

Because Plaintiff has filed no response to the Statement of the Facts or any argument as set forth in the Defendants' Memorandum in Support of Motion for Summary Judgment (Doc. 62), the court considers those facts as undisputed provided that they are supported by the evidence in the record. See Fed.R.Civ.P. 56(c) & (e). In addition, the court has reviewed three car camera videos of the incident and finds that the defendants' version of the facts are supported by this audiovisual evidence.[2]

On the afternoon of October 28, 2010, several law enforcement officers responded to an armed robbery on Hull Street in Ozark, Alabama. Two suspects, including Plaintiff's son, were detained at the scene. A few minutes after the police arrived, Plaintiff approached the area where the officers were conducting their investigation. Officer Culbreath told Plaintiff to "step back" and that he would speak to her in a few minutes. *Culbreath Dec*., p. 3. As she turned and began to walk away, Plaintiff reached for something in her purse. *Id*. Both

---

[2] The facts are supported to the extent they are recorded by the video cameras.

Officer Culbreath and Officer Larry Minton saw a piece of paper fall from Plaintiff's purse and onto the ground. *Id.*; *Minton Dec.*, p. 1. Officer Culbreath told Plaintiff, "You dropped something," and then he turned and continued to interview one of the suspects. *Culbreath Dec.*, p. 3; *Hicks' Dec.*, p. 2. Plaintiff picked up the paper, stated "It's not mine," and tossed it onto the ground. *Hicks' Dec.*, p. 2; *Minton's Dec.*, p. 1; *Mize's Dec.*, pp. 1-2.

Officer Hicks told Plaintiff to "pick that paper up." *Hicks' Dec.*, pp. 2-3; *Minton's Dec.*, p. 1. When Plaintiff insisted that the paper did not belong to her, Officer Hicks said, "Well, you just threw it on the ground. Pick it up." *Hicks' Dec.*, p. 3. Officer Hicks repeatedly instructed Plaintiff to pick up the piece of paper. Nonetheless, Plaintiff left the paper on the ground and walked away. *Hicks' Dec.*, p. 3; *Minton's Dec.*, p. 2; *Mize's Dec.*, p. 2. Officer Hicks instructed Officer Mize to go to Plaintiff. *Id.*

Officer Mize went to Plaintiff and asked her to pick up the paper. *Mize's Dec.*, p. 2. Plaintiff repeatedly yelled, "It's not mine," and walked away. Officer Mize followed her and repeated his request to pick up the paper. Plaintiff again turned around and insisted, "It's not mine!" *Mize's Dec.*, p. 2; Defs' Ex. B. Officer Mize grasped Plaintiff's left wrist and told her she was under arrest. *Mize's Dec.*, p. 2. When Plaintiff tried to pull away from Officer Mize, he placed her against the police car for support. *Id.* Officer Hicks approached Plaintiff and ordered her to put her hands on the car. *Id.*; Defs' Ex. A.

Plaintiff began yelling and struggling with the officers. *Id.* Officer Buggs noticed Officer Mize struggling to control Plaintiff and assisted Officer Mize and Officer Hicks in restraining her. Buggs' Dec., p. 2. Plaintiff resisted by pulling her arms away, tucking her

8

arms close to her chest, and kicking. *Id*., p. 2. Plaintiff continued to yell expletives, including calling Officer Mize a "mother f—er," a "dumb ass," and a "dumb bitch." Defs' Ex. A. At one point, Plaintiff kicked the inside of Officer Mize's right leg. Mize's Dec., p. 2; Buggs' Dec., p. 3. Officer Buggs warned Plaintiff she would be pepper sprayed if she continued to resist arrest. Buggs' Dec., o, 3; Defs' Ex. A.

Officers Buggs, Hicks, and Mize gained control over Plaintiff and placed her in handcuffs. Mize's Dec., p. 3. Officer Mize escorted Plaintiff to his car and placed her in the back seat. Mize's Dec., p. 4; Defs' Ex. B. On the way to the station, Plaintiff yelled at Officer Mize about "all that aggression when I kicked you in your nuts" and continued to call him names. Defs' Ex. C.

On November 15, 2010, a criminal complaint signed by Officer Mize charged Plaintiff with disorderly conduct in violation of Alabama Code § 13A-11-7(a)(2). On February 14, 2012, in the City of Ozark Municipal Court, Plaintiff was found guilty and convicted. On the same day, she appealed her conviction to the Dale County Circuit Court. Failing to consider that 2012 is a leap year, the City Clerk transmitted the appeal to the Dale County Circuit Court on March 1, 2012 – one day after the fifteen-day deadline for a municipality to file a notice of appeal as required by Alabama Code § 12-14-70(d). Consequently, the city prosecutor scrapped her meritorious arguments and moved to dismiss the charge against Plaintiff. Spivey's Dec., pp. 1-2. The Circuit Court granted the Motion and tossed the conviction on the ground of procedural error.

9

B.      **Unlawful Arrest**

Plaintiff claims that the defendants subjected her to an "unreasonable search of her person" without probable cause in violation of the Fourth and Fourteenth Amendments. Doc. 11, p. 8. The crux of Wright's argument is that the defendants violated her constitutional rights when they arrested her without a warrant or probable cause after she refused to pick up and throw away a piece of paper.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Case v. Eslinger,* 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kingsland v. City of Miami,* 382 F.3d 1220, 1226, 1232 (11th Cir.2004); *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996). Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed. *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Probable cause to arrest exists when an arrest is "objectively reasonable based on the totality of the circumstances..... This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.... Although probable cause requires more than suspicion, it does not require convincing proof

... and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th Cir.2002) (internal quotation marks and citations omitted). Even minor offenses, such as misdemeanors, may be the basis for a full custodial arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). *See also Ruiz v. Town of Indian Shores, Florida*, 390 Fed.Appx. 864 (11th Cir. 2010) (probable cause to arrest plaintiff for public consumption). "The [arresting officer] may conduct a lawful search incident to arrest by searching the [arrestee and] the area within the immediate control of the arrestee, into which he might be able to reach for a weapon or evidentiary items." *United States v. Ochoa*, 402 Fed.Appx. 478, 483 (11th Cir. 2010).

The defendants assert that they had probable cause to arrest Wright for a number of offenses. First, the defendants contend that they had reasonable suspicion to detain and probable cause to arrest Wright for criminal littering. Criminal littering is a Class C misdemeanor in the State of Alabama. Ala. Code § 13A-7-29(d). The statute provides, in pertinent part:

> (a) A person commits the crime of criminal littering if he or she engages in any of the following acts:
>
>> (1) Knowingly deposits in any manner litter on any public or private property or in any public or private waters, having no permission to do so. . . .
>
> (b) "Litter" means . . . paper . . . .

Ala. Code § 13A-7-29 (1975).

11

The elements of criminal littering are satisfied in this case. There is no dispute that Officer Hicks, Culbreath, Minton saw Wright toss the paper on the ground and that Officer Hicks confirmed with Officers Culbreath and Buggs that she did throw it onto the ground. Consequently, the facts within the "collective knowledge" of the defendants and "derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734. The court will quickly dispose of any argument that Wright's repeated denials that the paper belonged to her vitiates reasonable suspicion to detain and/or probable cause to arrest her. Actual ownership of the litter is not an element of the offense. Ala. Code § 13A-7-29. Moreover, "a police officer need not credit everything a suspect tells him." *Rodriguez v. Farrell*, 294 F.3d 1276, 1278 (11th Cir. 2002). There is no genuine dispute that Wright tossed the paper on the ground and refused the officers' directives to pick up the litter.

After Wright dropped the paper from her purse, picked it up, and threw it down again in front of an officer who was called to the scene to conduct a robbery investigation, it was reasonable for the officers to detain and/or arrest her for criminal littering. When Wright failed to comply and became disorderly, the undisputed facts demonstrate that the officers were entitled to arrest her for disorderly conduct.

Alabama Code, § 13A-11-7, provides, in pertinent part:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:

    (1) Engages in fighting or in violent tumultuous or threatening

>  behavior.
>
>  (2) Makes unreasonable noise.

The video recording indicates that Plaintiff made "unreasonable noise" when she engaged in trash talk, yelling expletives so loudly that she interrupted the investigation of the armed robbery. *See* Defs' Ex. A & B. In addition, it is arguable she engaged "in fighting or in violent tumultuous or threatening behavior" when she kicked Officer Mize near his groin. Thus, the undisputed facts demonstrate that the defendants had probable cause to arrest Wright for disorderly conduct. Plaintiff also does not dispute that she resisted arrest during the incident. "A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or another person." Ala. Code §13A-10-41 (1975). The undisputed facts indicate that she pulled away from the officers and kicked Officer Mize in the leg. In addition, Wright admitted to Officer Mize that she attempted to kick him in the groin. See Defs' Ex. C. The fact that Wright was neither charged with criminal littering nor resisting arrest is inconsequential. "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Board of Cnty Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

There is no genuine dispute of material fact that the defendants had reasonable suspicion to detain Wright for criminal littering and to arrest her for disorderly conduct. It is likewise undisputed that the officers also had probable cause to arrest Wright for criminal littering and resisting arrest and that they used reasonable force to affect the arrest. "The 'reasonableness' or a particular use of force must be judged by the perspective of a reasonable

13

officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The court concludes that summary judgment is due to be granted in favor of the defendants on the unlawful arrest claim. *Case*, 555 F.3d at 1326-1327(citations and quotations omitted) ("The existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest."). The defendants are therefore entitled to qualified immunity with respect to Wright's claim that she was unlawfully arrested in violation of the Fourth and Fourteenth Amendments.

### C. The State Law Claims

The defendants assert that the state law claims against them are due to be dismissed on the basis of state-agent and discretionary-function immunity. In Alabama, there are two types of state-law immunity: state-agent immunity and discretionary-function immunity. *Brown v. City of Huntsville*, 608 F.3d 724 (11th Cir. 2010).

> Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles,* 852 So.2d 117, 122 (Ala.2002). In *Ex parte Cranman,* 792 So.2d 392 (Ala.2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. *Id.* at 405.
>
> There is also statutory, discretionary-function immunity in Alabama. Specifically, § 6–5–338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. Ala.Code § 6–5–338(a) (1994) (

14

> "Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."). *Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6–5–338(a). *Ex parte City of Tuskegee,* 932 So.2d 895, 904 (Ala.2005) ("The restatement of State-agent immunity as set out in *Cranman,* 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6–5–338(a)."). So for our purposes, the question of whether City police officers Defendants Norris and Anderson receive immunity for Plaintiffs' state-law claims depends on application of *Cranman*'s state-agent immunity test.
>
> The Alabama Supreme Court established a burden-shifting framework for application of the state-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds,* 946 So.2d 450, 452 (Ala.2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.*

*Brown*, 608 F.3d 740-41.

This court previously found that the defendants were acting within their discretionary authority when they arrested Wright. Doc. 29, *Memorandum Opinion*, p. 15, *citing Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002) ("Generally arrests and attempted arrests are classified as discretionary functions."). Consequently, Wright bears the burden of demonstrating that each officer "acted willfully, maliciously, fraudulently, in bad faith, or beyond his . . . authority" and are therefore not entitled to either state-agent or discretionary-function immunity. *Brown*, *supra*.

In the Amended Complaint, Wright recycles her § 1983 wrongful arrest argument by claiming that the defendants falsely arrested and imprisoned her in violation of state law. Her argument, however, is paper thin. The existence of probable cause bars a claim for false

15

arrest and false imprisonment based on the arrest. *Walker v. City of Huntsville*, 62 So. 3d 474, 493 (Ala. 2010). As previously discussed, the undisputed evidence demonstrates the defendants had probable cause to arrest Plaintiff for disorderly conduct. In addition, Wright's conviction for disorderly conduct is prima facie evidence of probable cause, even though the conviction was subsequently nol-prossed on procedural grounds. *See Long v. Dietrich*, 2012 WL 4478802, at *8 (N.D. Ala., Sept. 20, 2012); *Woodruff v. City of Tuscaloosa*, 101 So. 3d 749, 753-54 (Ala. 2012).

Wright also brings a claim of assault and battery against the defendants. Before any force can be used in making an arrest, probable cause must exist to make a lawful arrest. *See Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). As previously discussed, the undisputed evidence demonstrates that the officers had probable cause to arrest Wright. In addition, Wright does not dispute that she acted in a disruptive manner during the investigation and that she pulled away and kicked Officer Mize at the time he attempted to restrain her. Thus, the officers were entitled to use reasonable force to affect her arrest.

Plaintiff also asserts that the defendants engaged in malicious prosecution. In Alabama, there are five elements of malicious prosecution: (1) that the defendant instituted a judicial proceeding against the plaintiff, (2) without probable cause, (3) but with malice, (4) and although the prior proceeding ended in the plaintiff's favor, (5) she still suffered damages. *Skinner v. Etheridge*, 564 So. 2d 902, 903 (Ala. 1990). There is no evidence that Officers Hicks, Culbreath, or Buggs instituted the prosecution against Wright. The evidentiary materials indicate Officer Mize is the only officer who instituted a judicial

16

proceeding against Plaintiff. Thus, Officers Hicks, Culbreath, and Buggs are clearly entitled to summary judgment on the malicious prosecution claim. In addition, as previously discussed, the undisputed evidence indicates the officers had arguable and actual probable cause to arrest Wright. Thus, Plaintiff fails to present a genuine dispute of material fact on her malicious prosecution claim against the defendants.

Wright fails to carry her burden of presenting facts supporting any willful, malicious, or bad faith actions by the defendants. This court therefore concludes that the officers are entitled to discretionary-function immunity on Wright's state law claims. Consequently, the defendants are entitled to summary judgment with respect to Wright's claims of unlawful arrest and imprisonment, assault and battery, and malicious prosecution against the defendants.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motions for summary judgment be granted and that this case be dismissed with prejudice. It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before March 25, 2016**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on

appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 10th day of March, 2016.

                                /s/Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE